SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
JONATHAN T. MCMICHAEL (CSB No. 304737)
jmcmichael@fenwick.com
MARTYNA M. SKRODZKA (CSB No. 326484)
mskrodzka@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

Attorneys for LASHIFY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LASHIFY, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>ALICIA ZENG AND PATRICK ELLSWORTH, d/b/a LILAC ST; AND ARTEMIS FAMILY BEGINNINGS, INC.,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lashify, Inc. ("Lashify") hereby files this Complaint against Alicia Zeng and Patrick Ellsworth, d/b/a Lilac St.; and Artemis Family Beginnings, Inc. (collectively, "Defendants") and alleges as follows:

**THE PARTIES**

1.    Plaintiff Lashify is a corporation organized under the laws of Delaware, having a place of business at 63 Greene St., #5A, New York, New York 10012.

FENWICK & WEST LLP
ATTORNEYS AT LAW

2. On information and belief, Defendants Alicia Zeng and Patrick Ellsworth (collectively, "Individual Defendants") are individuals residing at 918 Capp St., San Francisco, California 94110. On information and belief, Ms. Zeng and Mr. Ellsworth do business under the name "Lilac St." On information and belief, Lilac St. is neither an entity nor registered to do business in California, and instead is the name used by the Individual Defendants for the purpose of engaging in the infringing activity subject to this Complaint.

3. On information and belief, Defendant Artemis Family Beginnings, Inc. ("Artemis Family Beginnings") is a Delaware corporation having a place of business at 918 Capp St., San Francisco, California 94110. According to the registration information available on the California Secretary of State's website, Artemis Family Beginnings is registered to do business in California for the purpose of providing "fertility counseling."

4. The Individual Defendants and Artemis Family Beginnings will be referred to as "Defendants" or "Lilac."

## NATURE OF THE ACTION

5. This is an action to stop Lilac from willfully and unlawfully making, using, selling, offering for sale, marketing, and importing artificial eyelash extension systems and components ("the Accused Products") designed by copying Lashify's revolutionary, award-winning, and patented eyelash extension system.

6. Lilac ignored Lashify's requests to cease and desist its unlawful proliferation of copycat products designed to reap the benefits of Lashify's intellectual property, goodwill, know-how, and ingenuity, all without seeking any permission from Lashify to do so. Instead, Lilac has blatantly copied the innovations of Lashify, so it can profit from the tireless work and ingenuity of Ms. Sahara Lotti, Lashify's founder and the inventor of numerous patents.

7. Lilac's products infringe Lashify's patents, including U.S. Patent No. 10,660,388 ("the '388 patent") and U.S. Patent No. 10,721,984 ("the '984 patent") (collectively, the "Patents-In-Suit"). Lashify thus files this lawsuit not only to protect its own innovations, but also to protect further innovation in the beauty industry—innovation that otherwise would fall victim to the unfair and unlawful conduct of companies like Lilac.

## JURISDICTION AND VENUE

8. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Ms. Zeng and Mr. Ellsworth because, on information and belief, both individuals reside in this judicial district; have committed and/or contributed to the commission of the acts complained of herein in this judicial district; have engaged in business activities in and directed to this judicial district; have used, imported, offered for sale, sold, and/or advertised the Accused Products in this district; and have otherwise purposely availed themselves of the privileges and benefits of the laws of the State of California. On information and belief, Ms. Zeng and Mr. Ellsworth are registered to do business under the name Lilac St. in the City of San Francisco, California as Business Account No. 1113831. This Court also has personal jurisdiction over Artemis Family Beginnings because, on information and belief, Artemis Family Beginnings has a place of business at 918 Capp St., San Francisco, California 94110; has engaged in business activities in and directed to this judicial district; has imported, offered for sale, sold, and/or advertised the Accused Products in this district; and has otherwise purposely availed itself of the privileges and benefits of the laws of the State of California.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b), because, on information and belief, Ms. Zeng and Mr. Ellsworth reside in this judicial district; and Artemis Family Beginnings has committed acts of infringement and has a regular and established place of business in this judicial district. On information and belief, Lilac, including Ms. Zeng and Mr. Ellsworth, has targeted sales to California residents at least by operating a fully interactive commercial website, www.lilacst.com, offering for sale and selling the Accused Products to California residents. Lilac is committing tortious acts in the State of California, is engaging in interstate commerce, and has wrongfully caused Lashify substantial injury in the State of California.

## LASHIFY'S INNOVATIVE LASH EXTENSION SYSTEM

11. Lashify is a California start-up founded by Ms. Sahara Lotti who invented "the most natural-looking false lash system you've ever seen." (*See* https://www.instyle.com/beauty/lashify-

false-eyelash-system.) The Lashify system is a revolutionary, award-winning do-it-yourself ("DIY") luxury lash extension system that creates salon quality lash extensions in record time and in the comfort of one's home. The system is easy to use and, unlike salon extensions, is damage-free to natural lashes; it creates infinite possibilities for all eye shapes in minutes. As a result, the Lashify system has been recognized, used, and touted by Oscar-winning celebrities, world-renowned beauticians, popular magazines, online publications, and its many users.

12. Indeed, the Lashify system has been used by over one hundred thousand customers. Renée Zellweger, Reese Witherspoon, Nicole Kidman, Lupita Nyong'o, Kristen Bell, Kourtney Kardashian, Claire Danes, Melissa McCarthy, Janelle Monáe, Cynthia Nixon, Jessica Simpson, Maggie Gyllenhaal, Tracie Ellis Ross, Salma Hayek, Awkwafina, Liv Tyler, and Lena Dunham are just a few of the artists and influential figures who have used the Lashify system. The Lashify system "walked" the red carpets at the Golden Globes, Grammys, Emmys, Met Gala, and other globally followed events. The Lashify system has been used by influential makeup-artists Ariel Tejada, Jessica Smalls, Nick Barose, Anton Khachaturian, Matthew Van Leeuwen, Kirin Bhatty, and many more. It has been featured in publications such as InStyle, Elle, Glamour, Vogue, Allure, The Knot, Shape, and many others. And it has received numerous industry awards, including 2019 Glamour Beauty Award Winner, The Knot Beauty Awards 2019 Winner, and 2019 Shape Editor Pick.

13. Thus, unsurprisingly, customers of the Lashify system call it "the best invention since sliced bread," a "game changer," and "[t]he lash system you didn't know you needed." (*See* www.lashify.com.)

14. Individual lash extensions done at salons are time-consuming, and attach to a single lash with glue. Due to the ingredients of the glue and excess fiber weight, traditional lash extensions can be damaging. They can pull on natural lash roots, causing damage and lash loss. This time-consuming, costly process needs to be repeated every three weeks to maintain the desired results.

15. DIY artificial lashes did exist before the Lashify system, and still do. One option is strip lashes, a band of lashes designed to be applied with a removable adhesive over a natural top

COMPLAINT FOR
PATENT INFRINGEMENT                                     4                              Case No.: _____

lash line. These weigh heavily on the natural lashes, appear "faux," and are not comfortable to be worn for long periods of time. Another option are cluster lashes that are sections of a strip lash or groups of individual lashes designed to be applied with a hard glue, making them similarly heavy to the eyes, difficult to apply, and damaging if worn for extended periods of time or slept with.

16. Ms. Lotti, a frequent wearer of salon lash extensions, uninspired and frustrated by the lack of options in the lash industry and recognizing the need for innovation in the industry, set out to design a product that would meet her high standards. Ms. Lotti, herself a relentless innovator, put aside her career to fully devote herself to a new enterprise and passion. She created a lash lab in her living room; immersed herself in extensive studies of the human eyelid, the shape of lash lines, and various chemical compositions; and tested on her own lashes various prototypes and potential new product options. After years of working tirelessly toward her goal, she had created the Gossamer® lash: the lightest, flattest, and most natural-looking lash that merges with natural lashes like a coat of mascara—all without the skill of a lash artist or the time-consuming and damaging process offered by the salons. Ms. Lotti's research and development efforts also resulted in her discovery of Lashify's unique, hypoallergenic chemical compositions that are safe even for sensitive eyes. She invented the four components of the Lashify system in Lashify's Control Kit™: (1) the Gossamer® lashes in sterile lash cartridges, (2) the Fuse Control® Wand for applying the lashes, (3) the Whisper Light™ Flexible Bond, and (4) the Glass lash extender that seals the lashes in the event of tackiness. Each is innovative and, in combination, is a revolution that changed the lash industry.

17. Today, as a result of Ms. Lotti's hard work and ingenuity, Lashify is recognized as a market leader in the design of revolutionary lash extension products. A testament to its innovation and the strength of its brand is Lashify's extensive worldwide intellectual property portfolio, including United States and foreign patents, federally registered trademarks, and many pending patent and trademark applications.

18. The Lashify Control Kit™ includes two sets of Gossamer® lashes (12mm and 14mm) set in Lashify's innovative cartridge, a patented wand for fusing the lashes underneath the natural lash line, a bond, a sealer, and a luxury case:

COMPLAINT FOR
PATENT INFRINGEMENT                                        5                                    Case No.: _____



19.     Gossamer® lashes are made of polybutylene terephthalate (PBT) fibers—the best quality silk in the world sourced from Korea—heated to form delicate artificial lash sections, which upon application seamlessly blend with the natural lashes. The Gossamer® lashes are designed to  fit underneath the natural lashes, come in a variety of lengths, fluffiness, and curvatures and thus can be applied in virtually unlimited positions and arrangements. Indeed, users devise "maps" specifying locations of different types of Gossamer® lashes along one's natural lash line to achieve looks ranging from natural to glamorous to dramatic, and even colored. The revolutionary flat base invented by Ms. Lotti gives users the ability to stack for volume.

20.     The Fuse Control® Wand is used to apply the Gossamer® lashes underneath the natural lashes. It has a pleasing fluid design and comes in a variety of colors. It is used to fuse the Gossamer® lashes to the natural lash line for a stable and proper placement for up to 10 days.



21.     The Whisper Light™ Sided Mix Tip bond is a flexible, hypoallergenic adhesive designed exclusively to hold Gossamer® lashes. Its Biotin and Micro-flex technology creates a flexible and nourishing cushion underneath the lash line, protecting the roots and ensuring damage-free wear.

22. The Glass is a unique waterproof lash extender. Its application is the last step in Lashify's unique system. It finishes the Lashify look, sealing and extending the wear of the Gossamer® lashes.

## LILAC'S COPYING OF LASHIFY'S SYSTEM AND USE OF LASHIFY'S INTELLECTUAL PROPERTY

23. Unsurprisingly, albeit unfortunately, Lashify's innovative system attracted not just a loyal customer base, but also copycats seeking to profit from the fruits of Ms. Lotti's hard work and dedication. One of them is Lilac, who copied the revolutionary Lashify system.

24. On information and belief, Lilac was aware of Lashify's technology prior to developing the Accused Products. On information and belief, Alicia Zeng, Lilac's founder and owner, is a Google employee working as a Product Manager, and has held that position from July 2018 to the present. (*See* Ex. A.) During that time, Lashify was part of a Google Brand Accelerator incubator program. On information and belief, around that time Ms. Zeng learned of Lashify's technology, leading her and Mr. Ellsworth to "create and test their first sets of totally custom lash products in the fall of 2019." (*See* Ex. A.)

25. On information and belief, Defendants engaged in deceptive conduct in order to obtain Lashify's products for the purpose of copying those products. For example, Mr. Ellsworth contacted Lashify in August 2019 to request a material safety data sheet (MSDS) for Lashify's proprietary bond, representing that he and Ms. Zeng required the information so that Ms. Zeng could use the bond at her workplace in a lab:

> Contact Form Name:
> Alicia Zheng
>
> Email:
> pksellsw@gmail.com
>
> Body:
> I got this for my girl friend. She has here glue in the office and they need her to have a "MSDS" if she wants to keep it at here desk. (It's like a lab) Do you have a document like that? If not is it hazardous or can we just tell them it's fine?

Ms. Zeng and Mr. Ellsworth also placed numerous orders with Lashify starting in May 2019, on information and belief, to examine Lashify's patented products. Lilac launched shortly thereafter, even going so far as to compare its products to Lashify's Gossamer® lashes.

26. On information and belief, Lilac, including Ms. Zeng and Mr. Ellsworth, also became aware of Lashify's intellectual property through their membership in public and/or private Lashify groups. For example, both Ms. Zeng and Mr. Ellsworth have been members of Lashify's Facebook community group for some time, on information and belief, as observers of discussions regarding Lashify's patented technology and products.

27. On information and belief, Ms. Zeng and Mr. Ellsworth intentionally copied Lashify's innovative and patented lash system. Lilac described its purported reliance on applications for "machine learning" for "complex applications across medicine, language, and programming," and how machine learning might be "applied to making beauty products." (*See* Ex. A.) Indeed, according to Lilac, its products are "based off the newest beauty technology available." (*See* Ex. A.) On information and belief, Mr. Ellsworth has been employed by Tesla for years as a Senior Test Engineer and Senior Technical Program Manager. On information and belief, Mr. Ellsworth acquired expertise in machine learning technology through his employment, which was then used by Ms. Zeng and Mr. Ellsworth to copy Lashify's technology and create the Accused Products.

28. Lilac's copying of Lashify's system is nearly exact. Indeed, the products are nearly identical.

29. Lashify offers its system as a starter kit with a set of lashes, applicator, bond, and sealer. So does Lilac: Lilac's starter kit similarly includes a set of lashes, applicator, and bond.

| Lashify Control Kit™ | Lilac Starter Kit |
|---|---|



| Lashify Gossamer® Lashes | Lilac Lashes |
|---|---|
| Lashify Gossamer® Lash Cartridge | Lilac Lash Storage |
| Lashify Fuse Control® Wand | Lilac Applicator |
| Lashify Whisper Light™ Dual Sided Bond with Micro Mascara Tip | Lilac Bond |

30. Lashify pioneered using the highest quality silk (PBT) fibers in its clusters of Gossamer® lashes, enabling a multitude of feather light and natural-looking lash combinations. (*See* https://lashify.com/pages/why-lashify-is-superior.) Unsurprisingly, Lilac also advertises that its lashes are made in "clusters" of different lengths from "100% Korean Silk lash fibers" that are "[f]eather-light," and even has compared its infringing lashes to Lashify's Gossamer® lashes. (*See* https://lilacst.com/products/starter-kit.) Moreover, Lilac used Lashify's federally registered trademark GOSSAMER to advertise its own infringing products and to claim that its lashes are similar to Lashify's Gossamer® lashes, further evidencing Lilac's awareness of and intent to copy Lashify's intellectual property. On information and belief, Lilac set as its goal to copy Lashify's products and design, unlawfully taking advantage of Lashify's innovation in the industry.

**LILAC'S ATTEMPTS TO COVER UP ITS WILLFUL INFRINGEMENT**

31. In letters to Lilac on May 8, 2020, June 1, 2020, and June 4, 2020, Lashify identified its intellectual property, including the '388 patent, and requested that Lilac immediately remove infringing products from Lilac's website. Lilac has refused to cease its infringing activities.

32. Instead, Defendants engaged in an effort to cover their tracks and create a smokescreen as to the identity of the infringing parties. For example, in a letter from Lilac's counsel dated May 18, 2020, counsel asserted that Lilac is the business name used by Artemis Family Beginnings. This representation is an apparent attempt to shield Ms. Zeng and Mr. Ellsworth from liability for their willful infringement. On information and belief, Artemis Family Beginning is a corporation in the business of providing fertility counseling. Indeed, in April 2019, Ms. Zeng filed and signed Statement of Information with the California Secretary of State for the purpose of registering Artemis Family Beginnings to do business in California, wherein she identified "fertility counseling" as the type of business or services of the company. Ms. Zeng signed and filed another Statement of Information for Artemis Family Beginnings with the California Secretary of State in February 2020, stating "There has been no change in any of the information in the previous complete Statement of Information filed with the California Secretary of State." Cosmetic artificial lashes have no relation to "fertility counseling." The notion that Lilac is the business name for Artemis Family Beginnings is further rebutted by a registration filed with the City and County of

San Francisco, wherein Ms. Zeng personally registered as an "owner" to do business in San Francisco under the name "Lilac St." Ms. Zeng identified the type of business she and Lilac would be engaging in as "retail trade," not "fertility counseling." Artemis Family Beginnings' name does not appear on the registration.

33. Through counsel, Defendants have made representations that are contradicted by Lilac's own website. For example, in a letter dated June 2, 2020, Lilac's counsel asserted that Lilac does not encourage its customers to apply its lashes to underside of the eyelid, and that Lilac understands that the most common approach is to apply lashes to the upper side of the eyelid:

> "First, Lashify's patent claims methods which require, inter alia, the wearer to attach the set of lashes "to the underside" of the eyelid such that the "top side" of the lash "adheres to the underside" of the eyelid. **Lilac provides no instructions** with its products regarding how they are to be applied, let alone instructions **encouraging the wearer to adhere the lashes to the "underside" of the eyelid. Wearers can adhere the lashes to the upper side of the eyelid or the underside, as is their preference**. Indeed, **Lilac's understanding is that it is most common for users to adhere lashes to the more accessible upper side of the lid, above their natural lashes, than below as required by the claims**." (emphasis added)

34. These representations are knowingly false. To induce customers to purchase its lashes, Lilac's website and Facebook page contains photographs of individuals wearing its lashes. Those photographs show the lashes applied to underside of the natural lashes. An example is reproduced below (annotation added):



Given that Lilac markets its lashes by showing them applied to the underside of the natural lashes, its denial and feigned ignorance reflect only further deceptive conduct aimed at covering up its

COMPLAINT FOR
PATENT INFRINGEMENT                                11                                Case No.: _____

willful infringement.

35. As another example, in an effort to deny its copying and infringement, Lilac contends that its lashes are not heat fused as recited in the claims of the '388 patent. But Lilac's own website touted that its lashes utilized "innovative heat-fuse technology" (annotation added):

> • Feather-light lash fibers .08mm - .12mm thick, bonded with innovative heat-fuse technology

In an attempt to unwind this admission, Lilac removed it from its website and represented to Lashify (in a June 2 letter) that that "the statements relating to heat fusion formerly on Lilac's website were written without first confirming them with the manufacturer. They were based on the mistaken assumption that PBT, as a thermoplastic, would likely be heat fused." But Lilac's explanation does not make sense. According to Lilac, although it did not know how the lashes were manufactured, it assumed they utilized "*innovative* heat-fuse technology."

36. As another example of deceptive conduct, in a June 2 letter, Lilac stated through its counsel that "Mr. [Patrick] Ellsworth has not been involved in Lilac's business in any way." But Lilac's own website stated otherwise: "Alicia joined forces with her boyfriend, Patrick [Ellsworth], who had extensive experience with tech-enabled manufacturing from Tesla, to create and test their first sets of totally custom lash products in the fall of 2019. And the seed of Lilac St. was planted!" Consistent with Lilac's efforts to cover up its infringing activities, this statement, too, has now been removed from the website.

**FIRST CAUSE OF ACTION**
**(Infringement of United States Patent No. 10,660,388)**

37. Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

38. On May 26, 2020, the '388 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify. Lashify is the lawful owner by assignment of all right, title, and interest in the '388 patent, including the rights to exclude others and to sue and recover damages

for infringement.

39. A true and correct copy of the '388 patent is attached as **Exhibit B**.

40. Lilac was on actual notice of the '388 patent before the filing of this Complaint. Lashify sent correspondence putting Lilac on notice of the '388 patent, as well as Lilac's infringement thereof, prior to filing this Complaint.

41. Lilac has infringed and continues to infringe at least claim 1 of the '388 patent, directly, contributorily, and/or by inducement, by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '388 patent.

42. Use of Lilac's Accused Products according to their intended purpose meets each and every limitation of at least claim 1 of the '388 patent, either literally or under the doctrine of equivalents. For example, the Accused Products include a set of heat-fused lash extensions designed to be applied to an underside of the user's natural lashes in the manner set forth in claim 1 of the '388 patent. An example of Lilac's marketing materials encouraging customers to apply the lashes to the underside of the natural lashes is addressed above. An exemplary claim chart setting forth the way in which Lilac infringes at least claim 1 of the '388 patent is attached as **Exhibit C**.

43. Lilac also infringes the '388 patent indirectly by inducing others to infringe and contributing to the infringement of others, such as its customers and end users. For example, Lilac knowingly advertises, sells, and instructs how to use the Accused Products in an infringing manner, including on its website. (*See* Ex. C.) On information and belief, Lilac advertises, sells, and instructs how to use the Accused Products with specific intent to cause infringement or with willful blindness to the resulting infringement. Lilac also contributorily infringes the '388 patent by selling or offering to sell infringing products, such as the Accused Products, knowing them to be especially made or especially adapted for practicing the claimed invention of the '388 patent and not a staple article or commodity of commerce with substantial non-infringing uses. For example, as discussed above, Lilac advertises, sells, and instructs how to use the Accused Products, including on its website, in ways that emphasize the use of such products to perform the claimed methods of the '388 patent. On information and belief, the only way in which to use the Accused Products according

to Lilac's advertisements and instructions, and to achieve the benefits stated therein, is to infringe the '388 patent.  (*See* Ex. C.)  Lilac's advertising and instructions therefore demonstrate that the Accused Products have no substantial non-infringing uses, and that they are specifically intended for practicing the '388 patent.

44.   Lilac engaged in such actions with actual knowledge of the '388 patent and that its actions would cause direct infringement, or alternatively was willfully blind to these facts.  On information and belief, Lilac had knowledge that its Accused Products are especially made or especially adapted for use in infringement of the '388 patent.  Indeed, on information and belief, Lilac copied Lashify's patented system and methods in developing and offering for sale its own infringing products, including the Accused Products.  Lashify also contacted Lilac multiple times prior to filing this Complaint, asking that Lilac immediately "cease and desist" from using Lashify's technology and innovations.  Lilac has refused to do so.  Lilac has had actual knowledge of the '388 patent and knowledge that its acts were inducing and contributing to infringement of the '388 patent since before the filing of this Complaint.

45.   Lilac's acts of infringement of the '388 patent were and are undertaken without authority, permission, or license from Lashify.  Lilac's infringing activities therefore violate 35 U.S.C. § 271.

46.   As a direct and proximate consequence of Lilac's infringement of the '388 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Lilac is enjoined from infringing the '388 patent.

47.   Lilac's infringement of the '388 patent is willful, as Lilac knew of the '388 patent and did nothing to stop its blatant use and pirating of Lashify's intellectual property.

**SECOND CAUSE OF ACTION**
**(Infringement of United States Patent No. 10,721,984)**

48.   Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

49.   On July 28, 2020, the '984 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and

interest in the '984 patent, including the rights to exclude others and to sue and recover damages for infringement.

50. A true and correct copy of the '984 patent is attached as **Exhibit D**.

51. On information and belief, Lilac was on actual notice of the '984 patent before the filing of this Complaint. Lashify sent correspondence putting Lilac on notice of the '388 patent, as well as Lilac's infringement thereof, prior to filing this Complaint. The '984 patent is a continuation of the application that issued as the '388 patent.

52. Lilac has infringed and continues to infringe at least claim 1 of the '984 patent, directly, contributorily, and/or by inducement, by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '984 patent.

53. Lilac's Accused Products infringe the '984 patent, either literally or under the doctrine of equivalents. For example, the Accused Products include a set of heat-fused lash extensions as claimed in the '984 patent. An exemplary claim chart setting forth the way in which Lilac infringes at least claim 1 of the '984 patent is attached as **Exhibit E**.

54. Lilac's acts of infringement of the '984 patent were and are undertaken without authority, permission, or license from Lashify. Lilac's infringing activities therefore violate 35 U.S.C. § 271.

55. As a direct and proximate consequence of Lilac's infringement of the '984 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Lilac is enjoined from infringing the '984 patent.

56. Lilac's infringement of the '984 patent is willful as, on information and belief, Lilac knew of the '984 patent and did nothing to stop its blatant use and pirating of Lashify's intellectual property.

## PRAYER FOR RELIEF

WHEREFORE, Lashify prays for the following relief:

1) A judgment that Lilac's acts constitute patent infringement under the causes of action asserted in this Complaint;

2) A judgment permanently enjoining and restraining Lilac, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with Lilac, from:

   a) infringing any claim of the Patents-in-Suit; and

   b) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

3) A judgment requiring Lilac to, at Lilac's expense, withdraw from the market, account for, and properly destroy any and all products infringing the Patents-in-Suit;

4) A judgment requiring that Lilac pay Lashify all of its damages caused by Lilac's unlawful acts, including under 35 U.S.C. § 284, with prejudgment and post-judgment interest, as well as post-trial damages for any ongoing infringing acts;

5) A judgment awarding Lashify its reasonable attorneys' fees, costs, disbursements, and interest, as provided by law, including as provided by 35 U.S.C. § 285;

6) A judgment that Lilac's infringement has been willful, and ordering Lilac to pay treble damages as provided by law; and

7) Such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Lashify hereby demands a jury trial as to all issues so triable.

| | |
|---|---|
| Dated: August 28, 2020 | Respectfully submitted, |
| | FENWICK & WEST LLP |
| | By: */s/ Bryan A. Kohm*<br>Saina S. Shamilov<br>Bryan A. Kohm<br>Jonathan T. McMichael<br>Martyna M. Skrodzka |
| | Attorneys for Plaintiff Lashify, Inc. |